UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

DEC - 7 2007

RONALD STERN,

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

        Plaintiff,                    )

v.                                    )        Civil No. 07-609 (RMU)

FEDERAL BUREAU OF PRISONS.            )

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER THE DENIAL OF ITS MOTION TO TRANSFER OR, IN THE ALTERNATIVE, MOTION TO DISMISS FOR FAILURE TO A STATE CLAIM, AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## Introduction

While perhaps inartfully worded at times, the issue before the Court in this case has always been the same, whether the Federal Bureau of Prisons' (BOP) use of the Inmate Financial Responsibility Program (IFRP), 28 C.F.R. § 545.11(a)(2), to set payment schedules for restitution under the Mandatory Victims Restitution Act (MVRA) is in excess of statutory authority.[1]

---

[1]     In its motion to dismiss for failure to state a claim and opposition to Plaintiff's motion for summary judgment (BOP Opp'n), BOP declines to provide much argument regarding the interaction between the IFRP and MVRA on the basis the issue is not before the Court. BOP Opp'n at 12 n.7. BOP is mistaken. Plaintiff acknowledges that his repeated use of the words "promulgated" and "promulgation" in his motion for summary judgment have caused confusion for BOP. For that reason, Plaintiff has withdrawn and substituted these terms in his MSJ contemporaneous with this filing. See Plaintiff's Notice of Withdrawal And Substitution. Nevertheless, Plaintiff's use of the words "promulgated" and "promulgation" in referring to the interaction between the IFRP and the MVRA is not without support in the meaning of these terms. The root word "promulgate" is defined as "to put (a law) into action or force." Merriam-Webster's Collegiate Dictionary, 10th Edition. Here, both throughout his complaint and in his MSJ, Plaintiff makes clear that he is challenging the BOP's statutory authority to use the IFRP to set payment schedules for restitution under the MVRA. Plaintiff's Complaint (Pl. Compl.) at ¶ 1-2, 8-9; Pl. Memo at 1, 3, 9. BOP's use of the IFRP for this purpose is the putting of "a law into action" as contemplated by Plaintiff's understanding of the words "promulgated" and "promulgation." In any event, Plaintiff is not a lawyer and is entitled to liberal construction of his filings due to his pro se status. Erickson v. Pardus, ____ U.S. ____ (2007).

Plaintiff's    Complaint    at    ¶    1-2,    8-9;    Order    Denying
Defendant's  Motion  To  Transfer  (Mem.  Order)  at  5  n.2.  BOP's
efforts  to  sidestep  resolution  of  this  straightforward  claim  on
the  basis  that  the  MVRA  did  not  exist  when  §  545.11(a)(2)  was
originally  enacted  should  be  rejected.  BOP  Opp'n  at  10-13.
Lastly,  BOP's  motion  for  reconsideration  of  the  Court's  order
denying  its  motion  to  transfer  based  on  Plaintiff's  purported
"forum  shopping"  should  be  denied  as  well.

**Argument**

(1)  <u>The   Court   Should   Deny   The   Defendant's   Motion   For
Reconsideration</u>

BOP  asks  the  Court  to  reconsider  its  order  denying  BOP's
motion  to  transfer  on  the  basis  of  Plaintiff's  alleged  "forum
shopping."  BOP  Opp'n  at  7-9.  For  the  following  reasons,  BOP's
motion  should  be  denied.

In  late  December  of  2006,  Plaintiff  forwarded  the  complaint
in  this  case  to  his  son  for  filing  with  the  Court.  Decl.  of
Stern  at  ¶  1.  The  complaint  was  sent  to  Plaintiff's  son  in
order  to  give  Plaintiff's  son  the  opportunity  to  pay  the  $350
filing  fee  for  instituting  this  action  on  Plaintiff's  behalf.
<u>Id.</u>  Plaintiff's  son  promptly  obtained  a  money  order  to  cover
the  filing  fee,  enclosed  the  money  order  with  the  complaint,  and
Fed  Ex  both  to  the  Court.  <u>Id.</u>  The  Clerk  received  the  Fed  Ex  on
December  29,  2006.  Pl.  Compl..

Over  the  course  of  the  next  several  weeks,  Plaintiff  was
unable  to  confirm  the  docketing  of  his  complaint  by  the  Clerk.
Decl.  of  Stern  at  ¶  2.  During  each  inquiry,  the  Clerk's  office
advised  Plaintiff  that  it  could  not  find  Plaintiff's  son's  Fed

2

Ex. Id. Believing his first complaint to be lost, in early February of 2007, Plaintiff refiled his complaint in near identical form. Id. This time, though, Plaintiff sought leave to proceed in forma pauperis (IFP) because his son (not unreasonably) was unwilling to repay the $350 filing fee. Id. Plaintiff's replacement complaint was received by the Clerk on February 16, 2007. BOP Opp'n at Attachment A.

On March 16, 2007, Plaintiff's first complaint (that had been allegedly lost) was filed by the Clerk. Pl. Compl. Upon filing, Judge Sullivan endorsed that the complaint be treated as filed, nunc pro tunc, December 29, 2006. Id. This complaint was assigned to Judge Urbina and forms the basis of this action.

A couple of days after Plaintiff's first complaint was finally docketed, Plaintiff sought to voluntarily dismiss his second complaint, but was unable because it had not yet been docketed. Decl. of Stern ¶ 3. A few days later, Plaintiff's second complaint was filed by the Clerk and assigned to Judge Sullivan. BOP Opp'n at 3. On this same day, Judge Sullivan, without notice or an opportunity to respond by Plaintiff, sua sponte transferred the case to the U.S. District Court for the District of Georgia. Id.

Because Plaintiff's second complaint had been ordered transferred by Judge Sullivan, Plaintiff believed he could no longer voluntarily dismiss his second complaint in the District Court for the District of Columbia. Decl. of Stern ¶ 3. Instead, Plaintiff assumed that he had to wait until the case was docketed in Georgia. Id. After receiving notification through the Court's grant of his IFP motion that Plaintiff's

second complaint had been docketed in Georgia, Plaintiff promptly moved for voluntary dismissal of the duplicative action in order to avoid the necessity of Plaintiff paying the $350 filing fee, a fee that had already been paid to the Clerk in D.C. for Plaintiff's first complaint. Id.

While sordid, the above procedural history makes clear that the Plaintiff in this case has not been "forum shopping." The second complaint that was sua sponte transferred to Georgia was submitted only because of the Clerk's failure to timely docket Plaintiff's first complaint. Indeed, when Plaintiff submitted his second complaint to the Court in February of 2007, Plaintiff was operating under the assumption that his first complaint had been lost. Decl. of Stern at ¶ 2. Plaintiff should not be penalized for the Clerk's error. Moreover, the purely legal nature of Plaintiff's claim remains unchanged. Accordingly, the Court should adhere to its original denial of BOP's motion to transfer and deny BOP's motion for reconsideration.[2]

(2) The Court Should Deny The Defendant's Motion To Dismiss

BOP moves to dismiss this action for failure to state a

---

[2] While the propriety of Judge Sullivan's transfer order is not before the Court, Plaintiff asserts that Judge Sullivan's reasoning supporting transfer should be given little, if any, persuasive weight when deciding BOP's motion for reconsideration. As the court in In Re Chatman-Bey, 718 F.2d 484 (D.C. Cir. 1983) noted, sua sponte transfer orders "if ever appropriate, should be reserved for exceptional circumstances." Id. at 485. The Court's order denying BOP's motion to transfer in this case demonstrates not only that there are no exceptional circumstances warranting transfer, but also that, on balance, transfer to the S.D. Georgia is not convenient and in the interest of justice. Mem. Order at 5.

claim.  BOP Opp'n at 10-13.  According to the BOP, Plaintiff's challenge to § 545.11(a)(2) fails because the MVRA did not exist in 1987 when § 545.11(a)(2) was enacted.  Id.  This argument is specious, and it misstates Plaintiff's position.

The complaint in this case states that, "BOP's use of the IFRP to set payment schedules for restitution under the MVRA is ... in excess of statutory authority."  Pl. Compl. ¶ 8.  In no way does the preceding sentence limit the temporal scope of Plaintiff's case to the law as it existed in 1987 when § 545.11(a)(2) took effect.  Instead, Plaintiff's complaint focuses on the interaction between § 545.11(a)(2) and the MVRA from the date of the MVRA's enactment forward.  To that end, Plaintiff offers the following in opposition to the BOP's motion to dismiss.

Operating from the erroneous premise that Plaintiff is challenging BOP's authority to promulgate § 545.11(a)(2) in 1987, BOP does not offer much argument regarding the interaction between § 545.11(a)(2) and the MVRA.  Nevertheless, BOP acknowledges that several "circuit courts have concluded that the MVRA's provisions trump those of the IFRP."  Def. Opp'n at 12.[3]

---

[3]  BOP wiggles from this admission in its next breath asserting that none of these courts have struck down the IFRP as violating the APA.  BOP Opp'n at 12.  This may be true, but only because the conflict between the MVRA and the IFRP was not presented in the context of an APA claim.  Instead, in each of these cases, the court of appeals were presented with direct appeals in criminal cases.

Rather than belaboring the issue, Plaintiff merely reasserts that the outcome of this case is controlled by U.S. v. Braxtonbrown-Smith, 278 F.3d 1348, 1356 (D.C. Cir. 2002). In Braxtonbrown-Smith, the D.C. Circuit, relying on U.S. v. Pandiello, 184 F.3d 682, 688 (7th Cir. 1999), a case in which BOP concedes held the MVRA trumps the IFRP, BOP Opp'n at 12-13, remanded a restitution payment schedule to the district court to ensure that "the phrase 'not less than $250 as directed by the probation office' does not give the Probation Office authority to modify the monthly amount of restitution that Braxtonbrown-Smith is required to make upon release from custody." Braxtonbrown-Smith, at 1356. While this case involved a direct appeal in a criminal case, the import of Braxtonbrown-Smith, like the cases cited in Pl. Memo at 4, is clear -- only the courts may set payment schedules for restitution under the MVRA.[4] It follows that if only the courts can set restitution

---

[4]    BOP asserts that there is authority that differs with, or is more nuanced than, that cited by Plaintiff in Pl. Memo at 4. BOP Opp'n at 12 n.7. There may be, but Braxtonbrown-Smith is not one of these authorities. Moreover, the "nuances" BOP refers to lend no support for the conclusion that BOP has the statutory authority to set restitution payment schedules under MVRA. For instance, in U.S. v. Davis, 306 F.3d 398 (6th Cir. 2002), an alleged "nuance" case, the court indicated that district courts may rely on recommendations from outside sources, such as the probation office or BOP in setting a restitution payment schedule. Id. (emphasis added) At all times, though, the Davis court emphasized that the district court must retain "final approval over the schedule." Id. at 426. The IFRP, however, does not provide recommendations to district courts about what payment schedule to set. Instead, as BOP admits, it is prison officials under 28 C.F.R. § 545.11(a)(2) who are responsible for "developing a financial plan" for the inmate. BOP Opp'n at 5. Furthermore, while not relevant to the issue presented in this case, it is questionable whether Davis' proposed procedure for considering recommendations from outside sources in setting restitution payment schedules is permitted post-sentencing. Under MVRA, a sentence that imposes an order of restitution is a final judgment and may only be amended in limited circumstances. 18 U.S.C. § 3664(o). The solitary provision

payment schedules under the MVRA, then BOP may not use §
545.11(a)(2) to do so as well. U.S. v. Corley, 500 F.3d 210,
223-228 (3rd Cir. 2007).

**Conclusion**

The BOP's use of 28 C.F.R. § 545.11(a)(2) to set payment
schedules for restitution under the MVRA is in excess of BOP's
statutory authority. Accordingly, Plaintiff's motion for
summary judgment should be granted, and BOP's motion to dismiss
and for reconsideration should be denied.

Respectfully submitted,

Ronald Stern
Plaintiff pro se
#25241-053
Federal Satellite Low
2650 Hwy 301 South
Jesup, GA 31599

---

[4] (continued)

authorizing a court to modify a restitution payment schedule based on
information from an outside source is 18 U.S.C. § 3664(k). Under § 3664(k),
a court may modify a restitution payment plan upon notification of a
"material change in the defendant's economic circumstances." Id. (emphasis
added). Notification under § 3664(k) may come from the defendant, the victim
or victims owed restitution, or the United States. Id.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served this 5th day of December , 2007, via first-class mail on the following:

Thomas S. Rees
Assistant U.S. Attorney
Special Proceedings Division
555 4th Street, N.W. Room 10-911
Washington, DC 20530

_____
Ronald Stern
Plaintiff pro se

8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RONALD STERN,                    )

v.                               )     Civil No. 07-609 (RMU)

FEDERAL BUREAU OF PRISONS.       )

### DECLARATION OF RONALD STERN

I, Ronald Stern, the undersigned Plaintiff, declare under penalty of perjury that the following is true and correct to the best of my knowledge.  28 U.S.C § 1746.

1.    In late December of 2006, I sent a copy of the complaint in this case to my son for filing with the Court.  I sent the complaint to my son because he offered to pay the $350 filing fee on my behalf.  After receiving the complaint, my son obtained a money order in the amount of $350, enclosed the money order with the complaint, and Fed Ex both to the Clerk of Court for the U.S. District Court for the District of Columbia.  The Clerk received the Fed Ex on December 29, 2006.

2.    Over the course of the next several weeks, I was unable to confirm the docketing of my December 2006 complaint by the Clerk.  During each inquiry, the Clerk's office advised that it could not find the Fed Ex my son sent.  Figuring my December 2006 complaint to be lost, I sent another complaint to the court.  This complaint was nearly identical to the complaint the Clerk had supposedly lost.  Because my son was unwilling to repay the $350 filing fee, I moved for leave to proceed in forma pauperis contemporaneous with the filing of my second complaint. The Clerk received my replacement complaint on February 16, 2007.

3.    On March 16, 2007, my first complaint was found and filed by the Clerk. It was treated as filed on December 29, 2006, however, by order of Judge Sullivan, presumably because of the Clerk's delay in filing it. This complaint was assigned to Judge Urbina. After my first complaint was docketed, I tried to voluntarily dismiss my second complaint, but it had not been docketed yet. A few days later, though, my second complaint was docketed and assigned to Judge Sullivan. I did not have a chance to voluntarily dismiss the complaint, though, because Judge Sullivan <u>sua sponte</u> transferred the matter to the U.S. District Court for the S.D. of Georgia. Because the complaint had been ordered transferred, I figured I had to wait until the case was docketed in Georgia before I could dismiss it. Shortly after the second complaint was docketed in Georgia, I immediately voluntarily dismissed the action in order to avoid repaying the $350 filing fee. My submission of the second complaint was not an attempt to "forum shop."

I declare under penalty of perjury that the foregoing is true is correct to the best of my knowledge. 28 U.S.C. § 1746.

Signed this ___5th___ day of ___December_____, 2007.


                          _____
                          Ronald Stern


2

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served this _5th_ day of _December_, 2007, via first-class mail on the following:

Thomas S. Rees
Assistant U.S. Attorney
Special Proceedings Division
555 4th Street, N.W. Room 10-911
Washington, DC 20530

RONALD STERN